FILED

2015 Sep-04  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ALLEN ATCHINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  7:14-cv-01214-SGC |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

The plaintiff, Michael Allen Atchinson, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB").   Atchinson timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g).   For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Atchinson has a high school education and has previously worked as a driver for a wrecker company and a wet out technican.  (Tr. at 201).  In his application for DIB, he claimed that he became disabled on March 31, 2010, due to a shattered right femur, depression, arthritis, a knee injury, a leg injury, hip damage, nerve damage, and a loss of concentration.  (*Id.* at 68-69, 122-23, 200).   After his claims were denied, Atchinson requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 69-72, 75-76).  Following a hearing, the ALJ denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Rule 72 of the *Federal Rules of Civil Procedure*, the parties have voluntarily consented to the exercise of full dispositive jurisdiction by the undersigned magistrate judge. (Doc. 13).

Atchinson's claims. (*Id.* at 15-29). Atchinson was 44 years old when the ALJ issued his decision. (*Id.* at 38). After the Appeals Council declined to review the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Atchinson initiated this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show that he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 Fed. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Atchinson met the Social Security Administration's insured status requirements through March 31, 2015 and had

not engaged in substantial gainful activity since his alleged onset date of March 31, 2010. (Tr. at 20).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 404.1508. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[2] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Atchinson had the following severe impairments: status post fracture of the right femur with open reduction and internal fixation, right knee adhesive capsulitis, right trochanteric bursitis, hypertension, depression, and anxiety disorder. (Tr. at 20-21).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26.  The claimant bears the burden of proving that his impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled.  20 C.F.R § 404.1520(a)(4)(iii) and (d).   At the third step, the ALJ determined Atchinson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (Tr. at 21-23).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545.  A claimant's RFC is the most he can do despite his impairment.  *See id.* at § 404.1545(a)(1).  At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 404.1520(a)(4)(iv) and (e), 404.1560(b).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

4

it." *Id.* § 404.1560(b)(1).  The claimant bears the burden of proving that his impairment prevents him from performing his past relevant work.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined that Atchinson had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[3] with a number of restrictions. (Tr. at 23-27).  Specifically, the ALJ found that Atchinson is limited to occasional pushing and pulling with the upper extremities bilaterally; can do no foot control operations bilaterally; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally kneel, stoop, crouch, crawl, and balance with a hand held assistive device; can sustain no more than occasional exposure to extreme heat and cold and, therefore, needs a temperature controlled environment; must avoid excessive vibration and exposure to hazardous, moving machinery and unprotected heights; can have occasional exposure to irritants such as odors, fumes, dusts, and gases; can understand, remember, and carry out simple but not complex or detailed instructions; can have occasional work place changes that are gradually introduced and well explained; should have interaction with the public, co-workers, and supervisors that is casual and non-intense; requires a well-spaced environment without a need to complete tandem tasks; and should be supervised in a supportive and non-confrontational manner.  (*Id.*).  At the

---

[3] Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

fourth step, the ALJ determined Atchinson was not capable of performing any of his past relevant work.  (*Id.* at 27-28).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1).  If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled.  *Id.*  At the fifth step, considering Atchinson's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Atchinson can perform, such as those of an assembler, a pharmaceutical packer, and an optical goods assembler.  (Tr. at 28-29). Therefore, the ALJ concluded Atchinson was not disabled.  (*Id.*).

### III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal

citations omitted).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Atchinson argues that the ALJ did not apply the correct legal standard in determining his RFC, and that the ALJ's assessment of his RFC is not supported by substantial evidence.  (Doc. 10 at 6-8).  More specifically, he argues that the ALJ improperly rejected the findings of Jack Zaremba, M.D., failed to develop the record in light of a new MRI of his right knee performed in October of 2011, and substituted his judgment for that of both Dr. Zaremba and Robert Heilpern, M.D.  (*Id.* at 7-8).  Atchinson further argues that the ALJ's method of assessing his RFC was inconsistent with SSR 96-9p.  (*Id.* at 8-9).  Finally, Atchinson suggests that to the extent the ALJ believed there were inconsistencies in the medical evidence of record, he should have clarified the record by re-contacting the source or obtaining the opinion of a medical expert.  (*Id.* at 9).

Atchinson's medical records reveal the following: In April of 2008, Atchinson established care with a primary care physician, to whom he complained of lower back pain and heel pain.  (*Id.* at 296).  Shortly thereafter, he was involved in a workplace accident, as a result of which he fractured his right femur.  (*Id.* at 245).  He underwent surgery to repair the fracture.  (*Id.* at 241-42).  Thereafter, he participated in physical therapy with limited success.  (*Id.* at 265-277).  In September of 2008, Atchinson underwent a manipulation of his right knee to treat the adhesive capsulitis that had developed.  (*Id.* at 285).  Atchinson continued to complain of severe pain.  (*Id.* at 291-93).  In May of 2009, he underwent another manipulation of his right knee, at which time hardware was removed from his right distal femur.  (*Id.* at 283-84).  In September of 2009, an MRI of Atchinson's right knee revealed a probable degenerative tear of the anterior horn lateral meniscus, suspected adjacent osteochondral defects of a severely degenerated lateral femoral condyle, and concern for at least three intra-articular loose bodies.  (*Id.* at 281-82).  That same month, Atchinson underwent another procedure on his right knee.  (*Id.* at 279-80).  Thereafter, he participated in another course of physical therapy, again with limited success.  (*Id.* at 335-356).  Atchinson's subsequent medical records document reports of shoulder, thigh, knee, and hip pain, as well as numbness in his left arm and hand.  (*Id.* at 288-90, 362-63).  Atchinson also began to suffer from anxiety and depression after his workplace accident, as documented in records of visits to his primary care physician.  (*Id.* at 292-95).

Brian Peterson, M.D. performed a consultative exam of Atchinson in May of 2011.  (*Id.* at 314-18).  In connection with that exam, Dr. Peterson reviewed the MRI of Atchinson's right knee performed in September of 2009, as well as operative reports for that knee.  (*Id.* at 314).  He found that Atchinson had chronic post-traumatic right knee pain with subsequent left knee pain caused by an abnormal gait, chronic right trochanteric bursitis that was the likely source of

his chronic hip pain, and chronic musculoskeletal back pain that did not appear to be radicular and was likely caused by his abnormal gait. (*Id.* at 314-18).

In June of 2011, Robert Heilpern, M.D. completed Atchinson's physical RFC assessment after reviewing Atchinson's medical records and the consultative exam performed by Dr. Peterson. (*Id.* at 390-96). Dr. Heilpern found that Atchinson could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of at least two hours in an eight-hour work day, and sit for a total of at least six hours in an eight-hour work day. (*Id.* at 390). He further found that Atchinson had limited ability to push and/or pull with his lower extremities; had some postural limitations; had no limitations as to extreme cold or heat, wetness, humidity, noise, vibration, or fumes, odors, gases, poor ventilation, etc.; and should avoid all exposure to hazards such as machinery and heights. (*Id.* at 390-91, 393).

In October of 2011, another MRI was performed on Atchinson's right knee. (Id. at 360-61). Comparing that MRI to the September 2009 MRI of Atchinson's right knee, the radiologist found an abnormal increased signal in the anterior horn of the lateral meniscus showing irregularity in the anterior attachment, noting this was similar in appearance to that seen in the earlier MRI. (*Id.* at 360). He further found several intra-articular bodies as were seen in the earlier MRI. (*Id.*). Finally, he found a chronic tear of the ACL with laxity of a few intact fibers. (*Id.*).

According to Atchinson, he obtained an updated consultative exam from Jack Zaremba, M.D. in September of 2012 because Dr. Heilpern's physical RFC assessment was based on Dr. Peterson's consultative exam, which did not include a medical source opinion. (*Id.* at 7). Atchinson further claims that an updated consultative exam was warranted by significant

findings of the second MRI of his right knee performed after the consultative exam performed by Dr. Peterson and physical RFC assessment completed by Dr. Heilpern.  (*Id.*).

Dr. Zaremba completed a physical capacities evaluation of Atchinson, finding as follows: Atchinson could lift and/or carry 10 pounds occasionally or less frequently, sit for a total of six hours during an eight-hour work day, and stand and/or walk for a combined total of one hour during an eight-hour work day.  (*Id.* at 379).  Dr. Zaremba further found that Atchinson's pain was present to such an extent as to be distracting to adequate performance of daily activities or work, and that physical activity, including prolonged sitting, would greatly increase his pain and to such a adegree as to cause distraction from, or total abandonment of, tasks.  (*Id.* at 379).  Dr. Zaremba also completed a clinical assessment of Atchinson's fatigue/weakness, finding that Atchinson's fatigue/weakness was present to such an extent as to negatively affect adequate performance of daily activities or work, and that physical activity would greatly increase Atchinson's fatigue/weakness and to such a degree as to cause total abandonment of tasks.  (*Id.* at 381).

"The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so."  *Forrester v. Comm'r of Soc. Sec.*, 455 Fed. App'x 899, 902 (11th Cir. 2012) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "The ALJ may consider many factors when weighing medical evidence,

including the claimant's relationship with the examining or treating physician, whether a medical opinion is well-supported, whether a medical opinion is consistent with the claimant's records, and a doctor's specialization." *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 Fed. App'x 438, 439 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)). "[T]he ALJ may reject any medical opinion, if the evidence supports a contrary finding." *Forrester*, 455 Fed. App'x at 901-02 (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Here, the ALJ articulated the weight given to the medical opinions of Drs. Heilpern and Zaremba based on the factors set out in the social security regulations. He gave the medical opinions of Dr. Heilpern partial weight, noting that while Dr. Heilpern found that Atchinson could perform work at the light level of exertion, Atchinson's consistent complaints of lower extremity pain and the need to prevent exacerbation of Atchinson's current impairments warranted further limiting Atchinson to sedentary work. (*Id.* at 27). The ALJ's decision to give partial weight to Dr. Heilpern's medical opinions is supported by substantial evidence. As noted by the ALJ, Atchinson's medical records document consistent complaints of lower extremity pain. (*Id.* at 288-93, 362-63).

The ALJ gave the medical opinions of Dr. Zaremba little weight because they were inconsistent with Atchinson's history or treatment by his primary care physician, appeared to be based primarily on Atchinson's subjective reports of his symptoms, and were obtained not to seek treatment, but rather through attorney referral for purposes of generating evidence for Atchinson's appeal. (*Id.*). The reasons given by the ALJ for assigning Dr. Zaremba's medical opinions little weight constitute substantial evidence supporting that decision. *See* 20 C.F.R. § 404.1527(c) (ALJ may consider examining relationship, treatment relationship, supportability, and consistency when deciding what weight to give to medical opinions).

Contrary to Atchinson's assertion, the ALJ did not substitute his own judgment for that of Drs. Heilpern and Zaremba.  Although an ALJ may not arbitrarily substitute his own judgment for that of a medical professional, *see Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982), that is not what the ALJ did in this case.  Rather, the ALJ considered the medical opinions of Drs. Heilpern and Zaremba and gave valid reasons for assigning them partial and little weight, respectively.[4]  Furthermore, opinions on some issues, such as a claimant's RFC and whether he is disabled, are not medical opinions, but rather opinions on issues reserved to the Commissioner.  20 C.F.R. § 404.1527(d).

Atchinson suggests that to the extent the ALJ believed Dr. Zaremba's findings were inconsistent with those of Dr. Peterson and Dr. Heilpern, he should have clarified the record by re-contacting the source or obtaining the opinion of a medical expert.  (Doc. 10 at 9).  "[T]he ALJ has a duty to develop the record fully and fairly."  *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).  An ALJ is not required to re-contact a medical source to clarify an inconsistency if the ALJ determines other evidence is sufficient to determine whether a claimant is disabled.  *See* 20 C.F.R. § 1520(b); *Osborn v. Barnhart*, 194 Fed. App'x 654, 668 (11th Cir. 2006) (ALJ did not err by failing to re-contact medical professional for clarification of report because substantial evidence supported ALJ's determination claimant was not disabled and, thus,

---

[4] As noted above, Atchinson also argues that the ALJ's method of assessing his RFC was inconsistent with SSR 96-9p.  (Doc. 10 at 8-9).  It is not clear how Atchinson believes the ALJ's assessment of his RFC contravenes SSR 96-9p, which provides guidelines for evaluating a claimant's ability to do less than a full range of sedentary work.  Specifically, SSR 96-9p provides:

> An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource.  The RFC assessment must be sufficiently complete to allow an adjudicator to make an informed judgment regarding these issues.

Because the ALJ assessed Atchinson's abilities, limitations, and restrictions in detail and retained a vocational expert to aid in the determination of sedentary occupations Atchinson might perform, the ALJ complied with SSR 96-9p.

there was no need for additional information or clarification).   Likewise, "[a]n ALJ is not required to seek the independent testimony of a medical expert where the record is sufficient to determine whether the claimant is disabled and additional medical expert testimony would be unnecessary." *Prince v. Comm'r, Soc. Sec. Admin.*, 551 Fed. App'x 967, 972 (11th Cir. 2014).

Here, the ALJ sufficiently developed the record to make a decision regarding Atchinson's DIB claim.   In making that decision, he had the benefit of following: (1) medical records from Atchinson's primary care physician, (2) medical records from the surgeon who performed the procedures on Atchinson's right femur and knee, (3) Dr. Peterson's consultative exam, (4) a psychological evaluation performed by Cynthia Neville, Ph.D., (5) Dr. Zaremba's independent exam, (6) Dr. Heilpern's physical RFC assessment, (7) a psychiatric review and mental RFC assessment completed by Robert Estock, M.D., (8) activities-of-daily-living questionnaires completed by Atchinson and his father, and (9) Atchinson's testimony.   The ALJ considered this evidence, as well as Atchinson's symptoms and the extent to which they were consistent with the objective medical evidence and other evidence, in assessing Atchinson's RFC.   This was consistent with the social security regulations' instruction that a claimant's RFC should be "based on all the relevant evidence in [the claimant's] case record."   20 C.F.R. § 404.1545(a)(1). Within the record is substantial evidence to support the ALJ's determination of Atchinson's RFC.   This is so even in light of the second MRI of Atchinson's right knee performed in October of 2011.   As the Commissioner notes, that MRI was markedly similar to the MRI of the same knee performed in September of 2009, with the exception that the later MRI showed a chronic tear of the ACL.   (Doc. 11 at 11).   Accordingly, the ALJ was not required to re-contact any medical source or retain a medical expert.   The substantial evidence supporting Atchinson's RFC as determined by the ALJ is as follows:

Dr. Heilpern found that Atchinson could perform work at the light level of exertion (Tr. at 390-96), so certainly he could perform sedentary work.  The ALJ's determination Atchinson can perform sedentary work with certain restrictions is also supported by Dr. Neville's psychological evaluation and Dr. Estock's psychiatric review and mental RFC assessment.  Dr. Neville found that Atchinson suffered from anxiety and depression that might interfere with his ability to follow through to a mild to moderate degree, and that his ability to interact appropriately with co-workers and supervisors or to handle typical work pressures would also likely be negatively impacted by his psychiatric issues to a mild to moderate degree.  (*Id.* at 312). The ALJ gave Dr. Neville's medical opinions partial weight.  (*Id.* at 27).

Dr. Estock completed a psychiatric review of Atchinson after reviewing Atchinson's medical records, the consultative psychological evaluation performed by Dr. Neville, and Atchinson's activities of daily living as reported by himself and his father.  (*Id.* at 319-332).  Dr. Estock found that Atchinson's anxiety and depression moderately restricted his activities of daily living, made it moderately difficult for him to maintain social functioning, and made it moderately difficult for him to maintain concentration, persistence, or pace.  (*Id.* at 329).  He further found that Atchinson was partially credible, noting that while Atchinson alleged a lack of concentration, he was able to perform several tests of concentration or memory correctly.  (*Id.* at 331).  Dr. Estock also completed Atchinson's mental RFC assessment.  (*Id.* at 385-88).  He found that Atchinson could understand, remember, and complete simple tasks.  More specifically, although his concentration for detailed tasks would be limited at times by emotional factors, he could maintain attention sufficient to complete simple, one-to-two step tasks for periods of at least two hours.  (*Id.* at 387).  Dr. Estock further found that Atchinson appeared able to complete an eight-hour work day with all customary breaks, would function best with a

flexible work schedule in a well-spaced work setting, and could tolerate casual, non-intense interaction with co-workers and the general public. (*Id.*). Finally, Dr. Estock found that supervision of Atchinson should be supportive and non-confrontational, and that changes in his work environment and as to his expectations should be infrequent and introduced gradually. (*Id.*). The ALJ gave Dr. Estock's medical opinions great weight. (*Id.* at 27).

Although Atchinson testified to limited activities of daily living, as noted by the ALJ, he also testified that two of his children lived with him during the summer and that he was able to spend time with them on a daily basis. (*Id.* at 26, 58-60). Accordingly, as further noted by the ALJ, Atchinson's limitation to sedentary work with additional restrictions accommodates his minimal activities of daily living. (*Id.* at 26). The ALJ accounted for possible symptoms associated with Atchinson's hypertension by finding that he can never climb ladders, ropes, or scaffolds and should avoid exposure to hazardous, moving machinery and unprotected heights. (*Id.* at 25). Finally, as noted by the ALJ, there is no evidence Atchinson experiences side effects from the medications he takes on a daily basis—Xanax, Prozac, Zanaflex, and Metoprolol—that would interfere with his ability to perform sedentary work with certain restrictions, or that his non-severe impairments of left knee pain and lumbago would impair his ability to perform that work. (*Id.* at 24, 26).

For the foregoing reasons, the ALJ applied the correct legal standard in determining Atchinson's RFC, and that determination is supported by substantial evidence.

## V.     Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial

evidence and in accordance with applicable law.   Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 4th day of September, 2015.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE